NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0821n.06
Filed: October 6, 2005

No. 04-2032

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JAMES NORBERT GREEN, | ) | |
| | ) | ON APPEAL FROM THE |
| *Petitioner-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| GRAND TRUNK WESTERN RAILROAD | ) | O P I N I O N |
| INCORPORATED, | ) | |
| | ) | |
| *Respondent-Appellee*, | ) | |
| | ) | |
| NATIONAL RAILROAD ADJUSTMENT | ) | |
| BOARD AND THE BROTHERHOOD OF | ) | |
| LOCOMOTIVE ENGINEERS, | ) | |
| | | |
| *Respondent.* | | |

BEFORE:    COLE and ROGERS, Circuit Judges; BECKWITH, District Judge.[*]

**R. GUY COLE, JR., Circuit Judge.** Petitioner-Appellant James Norbert Green appeals

the district court's grant of Respondent-Appellee's motion for summary judgment upon review of

a decision by the National Railroad Adjustment Board (NRAB or Board). For the reasons discussed

below, we **AFFIRM** the district court's order.

## I.  BACKGROUND

---

[*]The Honorable Sandra S. Beckwith, Chief Judge of the United States District Judge for the Southern District of Ohio, sitting by designation.

Petitioner-Appellant James Norbert Green worked as a locomotive engineer for Grand Trunk Western Railroad, Inc. On April 16, 1997, Green was deemed medically disqualified from performing his work after failing two consecutive hearing tests. On both occasions, the test administrator was unable to obtain the voluntary responses from Green necessary to assess his hearing ability. Grand Trunk informed Green that he was medically disqualified pending further investigation. A third test, taken after he was disqualified, also failed to produce an accurate assessment of his hearing due to a failure in communication between Green and the administrating doctor. That doctor found inconsistencies between the portions of the test that Green could control and those that he could not, suggesting that he had falsified the test. On June 16, 1997, Green received a letter from Grand Trunk explaining the inconsistencies in his tests, and notifying him that he would remain medically disqualified while Grand Trunk sought the opinion of his personal physician. Green's disqualification was lifted on August 18, 1997, after an independent specialist verified that Green's hearing was normal.

Given the indications that Green was falsifying the tests, Grand Trunk conducted a formal investigation on August 15, 1997. On September 11, 1997, the investigative panel disciplined Green for failing to cooperate and for falsifying his hearing tests; the discipline took the form of thirty demerit points. Grand Trunk also denied Green's "time claims," in which he sought compensation for the four-month period of his disqualification. Green's union appealed the discipline and the denial of time claims to the NRAB, which notified Green's union and Grand Trunk of the date, place and time of a hearing on the appeal. The union represented Green before the NRAB; Green was not present at the hearing. The NRAB affirmed the discipline and the denial of the time claims. Green

appealed the NRAB's ruling to the district court, which granted Grand Trunk's motion for summary judgment.

## II.  ANALYSIS

This action is governed by the Railway Labor Act, 45 U.S.C. §§ 151-188.  Although we review the grant of summary judgment *de novo*, *Allen v. Michigan Dep't of Corrections*, 165 F.3d 405, 409 (6th Cir. 1999), our review of NRAB awards is similar to that used in other agency contexts, and has been called "among the narrowest known to the law." *Jones v. Seaboard System R.R.*, 783 F.2d 639, 642 (6th Cir. 1986). Thus, we can only overturn an award by the NRAB for: (1) failure of the NRAB to comply with the requirements of the Railway Labor Act; (2) failure of the NRAB to conform or confine itself to the matters within the scope of its jurisdiction; or (3) fraud or corruption.  45 U.S.C. § 153(q); *Sheehan v. Union Pac. R. Co.*, 439 U.S. 89, 93 (1979).  Green argues that the NRAB award should be set aside on each ground of review.

First, Green argues that, because he did not receive written notice of the exact location and date of the NRAB hearing, the Board did not comply with 45 U.S.C. § 153(j), which requires the Board to provide notice of a hearing to employees involved in such a dispute.  However, Green had actual notice of the hearing.  It is undisputed that Green's union counsel notified Green of the time, date, and general location of the hearing.  Although the date of the hearing changed, Green's counsel notified Green of the new hearing date. Green was represented by the union's attorney at the hearing itself.  In *Cole v. Erie Lackawanna Ry. Co.*, 541 F.2d 528, 534 (6th Cir. 1976), we made clear that where employee-grievants have authorized their union to represent them, actual notice of

proceedings satisfies the statutory notice provisions. For this purpose, actual notice is notice for a sufficient period to allow the employee to consult with union officials and relay information in order to aid the union's effective presentation of his claims *Id*.

Second, Green alleges that the NRAB's decision should be set aside due to fraud. Fraud in this context is understood to mean fraud by a member of the Board, not fraud by a party. *See Fine v. CSX Transp., Inc.*, No. 99-1645, 2000 WL 1206526, at * 2 (6th Cir. Aug. 18, 2000). *See also, Pacific & Arctic Ry. & Nav. Co. v. United Transp. Union*, 952 F.2d 1144, 1148 (9th Cir. 1991); *Woodrum v. Southern Ry. Co.*, 750 F.2d 876, 882 (11th Cir. 1985), *cert. denied*, 474 U.S. 821 (1985). Although Green correctly argues that complete unwillingness by a Board member to respond to any evidence or argument in support of one of the parties' positions would constitute fraud, *Pacific & Arctic Ry.*, 952 F.2d at 1148, he brings forth no evidence that any Board member refused to consider his claims.

Third, Green argues that the NRAB awards were not within the scope of its jurisdiction because its rulings were not based on an interpretation of the collective bargaining agreement (CBA). The NRAB has jurisdiction only over "minor disputes" between employees and carriers growing out of grievances or the interpretation or application of collective bargaining agreements. 45 U.S.C. § 153(i). Given Congress's intent to keep minor disputes within the NRAB and out of the courts, *Union Pacific R. Co. v. Sheehan*, 439 U.S. 89, 94 (1978), an NRAB decision falls outside its jurisdiction only if it is in no way supportable by an interpretation of the CBA, its implied terms, or past practices between the parties. *See Norfolk & W. Ry. v. Bhd. of Ry., Airline, & S.S. Clerks*, 657 F.2d 596, 599-601 (4th Cir. 1981).

Green argues that the NRAB's decision strayed from two specific provisions of the CBA. Green first argues that Grand Trunk did not act in accordance with Article 73, the provision of the CBA governing medical disqualification, which requires Grand Trunk to handle disqualification of employees for medical reasons "in the usual way." Here, there is undisputed evidence that the requirement of hearing examinations was part of the regular practice of the parties. Moreover, federal regulations require train engineers' hearing to be within certain limits, and a Grand Trunk manager stated that the railroad had always required physical examinations of its employees. *See, e.g.*, 49 C.F.R. §§ 240.101 & 240.121. Hearing tests, required by federal law, can be read to be implicit terms of the CBA, just as suspension pending retesting can be understood as "the usual way" of resolving hearing-related medical issues for engineers. *See, e.g.*, *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 316-18 (holding drug testing, and related disciplinary measures, to be an implicit term of a CBA based on past practice between the parties).

Article 73 requires Grand Trunk to provide employees with certain physical examinations within 30 days of a request in writing if an employee is not satisfied with the manner in which Grand Trunk treated him. Green argues that he was not aware that his suspension was for medical reasons until receiving the letter from Grand Trunk explaining the inconsistencies in his testing, and was thus not given a chance to submit a request for further testing under Article 73. However, following the very first hearing test, Green was sent a letter notifying him that he was at risk of medical disqualification. Whether or not Green's supervisor told him, at the time of the suspension, that he had been disqualified for medical reasons, that letter was sufficient to put Green on notice that he was in danger of a medical disqualification for hearing-related issues.

Green further claims that Grand Trunk did not follow Article 54, the provision in the CBA governing discipline. Green argues that, because Article 54 requires an investigation before a disciplinary suspension, he should not have been suspended between June 17 and September 11 when the investigative panel rendered its decision, because Grand Trunk's letter shows that it believed on June 17 that Green had falsified a hearing test. However, the record clearly illustrates that independent of the disciplinary charges, Green was not medically cleared to return to work until August 18. In fact, Green was allowed to work after being medically cleared despite the pending disciplinary charges against him.

Green also claims that Article 54 was not followed insofar as it requires hearings to occur within 10 days of Grand Trunk's awareness of the events for which an employee is being investigated. However, the formal investigation was first scheduled for June 24, 1997, seven days after Grand Trunk first notified Green that he was suspected of falsifying the tests. The NRAB found that the investigation was delayed because Green and his union lawyer requested several continuances. Thus, in affirming the discipline, the NRAB's award was justified.

In addition to the above holdings, this Court adopts the reasoning and conclusions of the district court, and affirms its judgment. Our decision is based on a careful review of the NRAB award, the district court opinion, the parties' briefs and submissions, and the applicable authority.

### III. CONCLUSION

For the preceding reasons, we **AFFIRM** the judgment of the district court.